IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROSE CASE,

        Plaintiff,

vs.                                    Case No. 11-2174-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. <u>Barnhart v. Thomas</u>, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. <u>Thompson</u>, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On October 28, 2008, administrative law judge (ALJ) Susan B. Blaney issued her 1st decision, finding that plaintiff could perform work that exists in significant numbers in the national economy (R. at 11-18). Plaintiff sought judicial review of the agency decision. On December 23, 2009, the U.S. District Court for the District of Kansas reversed the decision of the Commissioner, and remanded the case for further hearing (R. at 272-285; Case No. 09-2058-KHV).

4

On November 23, 2010, ALJ Susan B. Blaney issued her 2nd decision (R. at 440-448).[1]  Plaintiff alleged disability beginning June 23, 2003 (R. at 440).  Plaintiff was insured for disability insurance benefits through December 31, 2005 (R. at 440).  Thus, in order to be eligible for disability insurance benefits, the evidence must demonstrate that plaintiff was disabled some time between June 23, 2003 and December 31, 2005 (R. at 440).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since June 23, 2003, her alleged onset date (R. at 441, 447).  At step two, the ALJ found that plaintiff had the following severe impairments: status post thyroidectomy, non ST segment myocardial infarction requiring angioplasty and stenting of two arteries, and status post removal of a colon abscess (R. at 442, 447).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 447).  After determining plaintiff's RFC (R. at 445-446, 447), the ALJ determined at step four that plaintiff could not perform her past relevant work (R. at 446, 447).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 446, 447).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 448).

---

[1]ALJ Blaney had issued a decision on September 24, 2010 (R. at 260-268); however, she issued an "amended" decision on November 23, 2010.

**III.  Did the ALJ err in his determination at step five that plaintiff can perform other work in the national economy?**

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993).  Plaintiff argues that the ALJ failed to meet their burden at step five because the ALJ (at the 2nd hearing, prior to the 2nd decision by the ALJ) failed to ask the vocational expert (VE) what jobs in the national economy plaintiff could perform after providing the VE with the limitations contained in the ALJ's RFC findings (Doc. 14 at 16-17).

In the ALJ's first decision, the ALJ made the following RFC findings:

> Claimant had the following residual functional capacity from June 23, 2003 to December 31, 2005: could stand/walk up to six hours in an eight hour day; could sit six hours in an eight hour day; could lift 20 pounds occasionally and 10 pounds frequently; could occasionally bend, stoop, and twist; could not climb ladders; and could not tolerate excessive dust, fume[s], chemicals, or temperature extremes.

(R. at 17, <u>see</u> R. at 15).  In her second decision, the ALJ made the same RFC findings:

> Accordingly, on review of all of the credible evidence of record the undersigned finds that from June 23, 2003 through December 31, 2005 claimant retained the following residual functional capacity: could stand/walk up to

> six hours in an eight hour day; could sit six
> hours in an eight hour day; could lift 20
> pounds occasionally and 10 pounds frequently;
> could occasionally bend, stoop, and twist;
> could not climb ladders; and could not
> tolerate excessive dust, fumes, chemicals, or
> temperature extremes. This is the same
> residual functional capacity found to be
> supported by the record in the prior
> decision.

(R. at 445-446, see R. at 447).  As the record demonstrates, the

ALJ made the same RFC findings in both decisions.

At the hearing on September 5, 2008, prior to the 1st ALJ

decision, the ALJ presented the VE with the above RFC findings.

The VE testified that plaintiff could perform the following jobs:

small parts assembler, bench assembler, inserting machine

operator, administrative support worker, printer circuit board

screener, and order clerk (R. at 244-245).  In her 1st decision,

the ALJ found that, based on the VE testimony, plaintiff could

perform these other jobs in the national economy (R. at 16).  In

her 2nd decision, the ALJ again identified the six jobs that had

previously been found to be jobs that plaintiff could perform

after taking into consideration plaintiff's RFC (R. at 446).

At the hearing prior to the 2nd ALJ decision, the ALJ asked

the VE whether plaintiff could perform the above jobs if

plaintiff had some limitations described in the report of a

medical provider, ARNP (advanced registered nurse practitioner)

Frick (R. at 431-432, 446, 195, 197).  The VE at the 2nd hearing

said that the limitations from the report which were provided by

7

the ALJ would not prevent plaintiff from performing any of the jobs identified (R. at 431-432).  However, the ALJ made RFC findings which rejected the opinions of this medical provider (R. at 442-443, 444).

Plaintiff has not contested the validity of the ALJ's RFC findings, and has not contested the ALJ's reliance on the VE's testimony at the 1st hearing, in which the VE identified six jobs that plaintiff could perform given the RFC limitations provided by the ALJ.[2]  In light of the fact that the RFC findings in the 2nd decision were identical to the RFC findings in the 1st decision, there was no need for the ALJ at the 2nd hearing to ask the VE if plaintiff could perform other work in the national economy after taking into consideration the ALJ's RFC findings for the plaintiff.  Because the RFC findings in both decisions were identical, the ALJ could reasonably rely on the VE's testimony at the 1st hearing that plaintiff, given the ALJ's RFC findings, could perform the six jobs identified by the VE.[3]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[2]In fact, at the 1st hearing, plaintiff's counsel stated that the VE was "one of the most esteemed vocational experts in the country" (R. at 243).

[3]The decision of the court essentially adopts the analysis set forth by defendant in their response brief (Doc. 17).  Significantly, plaintiff filed no reply brief contesting or disputing defendant's analysis.

Dated this 30th day of May, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge